UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

                            Case No. 2:22-cr-20

v.

                            Hon. Hala Y. Jarbou

GERMIN BAEZ GUZMAN,

     Defendant.

_____/

## OPINION

Defendant Germin Baez Guzman has been charged with attempted possession with intent to distribute forty or more grams of fentanyl.  (Indictment, ECF No. 1.)  He moves to suppress evidence obtained from the search of a package mailed to a house that he owns in Menominee, Michigan.  For the reasons herein, the Court will deny the motion.

## I. BACKGROUND

On August 26, 2022, Matt Schmitz, a United States Postal Service Inspector, applied for and obtained a search warrant to search a parcel mailed from Surprise, Arizona, to "G. Baez, 1714 13th St., Menominee, MI."  (Warrant, ECF No. 40-1, PageID.118.)

According to the warrant affidavit signed by Schmitz, he had been employed by the United States Postal Inspection Service for 18 years.  (Warrant Aff., ECF No. 40-1, PageID.122.)  As part of his duties, he investigated the use of U.S. Mail to send and receive controlled substances.

In August 2022, Investigator Jake Lauren of Michigan's Upper Peninsula Substance Enforcement Team ("UPSET") had told Schmitz that he received information that Defendant was distributing cocaine and Percocet pills.  Specifically, a confidential source told law enforcement

during an interview in March 2022 at the Marinette County Jail in Marinette, Wisconsin,[1] that "they purchase Percocet pills and cocaine from Guzman."  (*Id.*, PageID.123.)  And in July 2022, a different confidential source told law enforcement during a traffic stop that "they had recently purchased a 'blue Percocet 30 pill' from Germin Guzman."  (*Id.*)

Lauren told Schmitz that the confidential sources "did not provide the information on Germin Guzman in exchange for money or consideration on pending criminal charges."  (*Id.*)  Lauren also discovered through a property-records search that Guzman had purchased a property at "1714 13th St. in Menominee, MI" in March 2022.  (*Id.*)

Schmitz averred in the warrant affidavit that he had executed numerous search warrants for parcels destined for northeast Wisconsin and Michigan's Upper Peninsula and discovered methamphetamine, cocaine, and "small blue pills displaying the inscription 'M/30.'"  (*Id.*)  These pills resemble Percocet but contain fentanyl.  (*Id.*)   In 2022, Schmitz had been involved in investigations that seized over 30,000 blue fentanyl tablets inscribed with "M/30" from parcels sent through the U.S. Mail.  Thus, Schmitz believed that the "blue Percocet" pill referenced by the confidential source was, in fact, a tablet containing fentanyl.  (*Id.*)

 Schmitz queried USPS records for parcels delivered to Defendant's property and learned that six Express Mail parcels "weighing between .1 and .4 pounds" had been mailed from Surprise, Arizona, to that address between May and August 2022.  (*Id.*)  In Schmitz's experience, individuals receiving controlled substances "commonly receive mailings or parcels that originate from the same general geographic area on a regular basis[.]"  (*Id.*)  Accordingly, Schmitz asked the post

---

[1] The Marinette County Jail is less than five miles away from Menominee, Michigan.  Both are close to the Michigan-Wisconsin border.

office in Menominee to notify him if they received additional packages from Surprise, Arizona, addressed to 1714 13th Street.

On August 25, 2022, the Menominee post office informed Schmitz that they had received a Priority Mail Express Flat Rate envelope weighing 6 ounces that was addressed to "G. Baez, 1714 13th St, Menominee, MI 49858" with a return address of "A. Soli, 18394 N 170th Ln, Surprise, AZ 85374." (*Id.*, PageID.124.)   The address information was handwritten on the envelope. (*Id.*, PageID.122.)  Schmitz went to the post office and looked at the package.  It had "a bulge that was approximately 4-5 inches long and one inch thick, a size consistent with [the envelope] possibly containing a quantity of controlled substances." (*Id.*, PageID.124.)

Schmitz then searched the law enforcement database for "A. Soli" at the address in Surprise, Arizona, and learned that "no one with the last name of Soli was known to be, or to have been, associated with [that] address." (*Id.*)   In Schmitz's experience, individuals mailing controlled substances commonly use fictitious return addresses to conceal their identities. (*Id.*)

Based on the foregoing facts, Schmitz applied for a warrant to search the package.  A federal senior district judge approved the warrant on August 26, 2022.  Schmitz executed the warrant that same day and discovered a candy box wrapped in a plastic shopping bag. (Warrant Return, ECF No. 40-1, PageID.120.)  The candy box contained 804 blue tablets inscribed with M and 30 that tested positive for fentanyl. (*Id.*)

Defendant now moves to suppress the evidence obtained from that search, contending that the search warrant affidavit lacked sufficient facts to give rise to probable cause and that the good faith exception to the exclusionary rule does not apply.

## II. STANDARD

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

That right extends to packages and letters sent through the mail.  *United States v. Van Leeuwen,* 397 U.S. 249, 251 (1970).  Thus, warrants to search packages must be supported by probable cause.  *See* U.S. Const. amend. IV.  "Probable cause exists when an affidavit shows a 'fair probability' that criminal evidence will be found in the place to be searched."  *United States v. Lawson*, No. 21-5914, 2022 WL 2813239, at *4 (6th Cir. July 19, 2022) (quoting *United States v. Hines*, 885 F.3d 919, 923 (6th Cir. 2018)).  In other words, "there must be a 'nexus between the place to be searched and the evidence sought.'"  *Id.* (quoting *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005)).

The Court assesses the "four corners" of the search warrant affidavit to determine "whether, under the totality of the circumstances, the low bar of probable cause has been overcome."  *Id.*; *see District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) ("Probable cause 'is not a high bar.'" (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014))).  When doing so, the Court gives "great deference" to the issuing judge's determination.  *Illinois v. Gates*, 462 U.S. 213, 236 (1983).  The Court must decide whether "'the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited[.]'"  *United States v. Perry*, 864 F.3d 412, 415 (6th Cir. 2017) (quoting *United States v. Brown*, 732 F.3d 569, 572-73 (6th Cir. 2013)).  "Notably, whether a search warrant affidavit establishes this nexus is a case-by-case determination and the answer is not always obvious."  *United States v. Ward*, No. 22-1233, 2023 WL 370911, at *2 (6th Cir. Jan. 24, 2023).

If the Court concludes that the judge issuing the warrant lacked a substantial basis for finding probable cause, then the Court must consider whether to exclude the evidence obtained from the search.  "In *United States v. Leon*, the Supreme Court created an exception to the exclusionary rule for evidence 'seized in reasonable, good-faith reliance on a search warrant that

is subsequently held to be defective.'" *United States v. Gilbert*, 952 F.3d 759, 763 (6th Cir. 2020)

(quoting *United States v. Leon*, 468 U.S. 897, 905 (1984)). "[E]vidence obtained pursuant to an

invalid warrant need not be suppressed 'when an officer acting with objective good faith has

obtained a search warrant from a judge or magistrate and acted within its scope.'" *United States

v. Waide*, 60 F.4th 327, 341 (6th Cir. 2023) (quoting *Leon*, 468 U.S. at 920). "But an officer does

not act in objective good faith if the warrant is 'based on an affidavit so lacking in indicia of

probable cause as to render official belief in its existence entirely unreasonable.'" *Id.* (quoting

*Leon*, 468 U.S. at 923 (internal quotation marks omitted)).

### III. ANALYSIS

In summary, the warrant affidavit in this case identifies the following facts to support a

finding of probable cause:  (1) a few months earlier, one informant reported to law enforcement

that they "purchase" Percocet pills from Defendant; (2)  about a month earlier, another informant

reported that they had "recently" purchased a Percocet pill from Defendant that was similar in

appearance to those containing fentanyl; (3) such pills had been discovered in other mailings to

northeast Wisconsin and Michigan's Upper Peninsula; (4) Defendant owned a property that had

received six small Priority Mail Express packages from Surprise, Arizona, during the previous six

months, consistent with a regular delivery of goods from that location to Plaintiff; (5) the subject

package was similar to the previous ones in that it was a Priority Mail Express package from

Surprise Arizona of roughly similar weight as the others; (6) the subject package had what Schmitz

determined was a "bulge . . . consistent with . . . possibly containing a quantity of controlled

substances"; and (7) the name of the sender on the package appeared to be false, which suggested

that the sender was attempting to avoid identification.  (Warrant Aff., PageID.123-124.)

These facts were sufficient to give rise to reasonable suspicion, but whether they were

sufficient to establish probable cause is a closer call.  When finding reasonable suspicion to believe

that a package contained controlled substances or evidence of criminal activity, the Supreme Court and the Sixth Circuit have relied on the same sort of facts that are present here, including:  false or fictitious sender information; handwritten labels; repeat mailings between the same locations; the use of a trackable mailing service like Express Mail; and the inspector's experienced assessment of the characteristics of the package, including its weight and outward characteristics.  *See, e.g.*, *United States v. Van Leeuwen*, 397 U.S. 249, 252 (1970) (noting, among other things, the "nature and weight of the packages" and the use of a "fictitious return address" to support reasonable suspicion of illegally importing gold coins); *United States v. Alexander*, 540 F.3d 494, 501 (6th Cir. 2008) (relevant facts included, among other things, a handwritten label, a source city and destination zip code that had been used in the past for the trafficking of narcotics, and the "dense" nature of the package); *United States v. Underwood*, Nos. 95-5441, 95-5442, 1996 WL 536796, at *3-4 (6th Cir. Sept. 20, 1996) (relevant facts included, among other things, handwritten labels, the use of Express Mail, a "regular schedule of mailings," the sender's location in a "drug source city," fictitious return addresses, and packages with "volume to them"); *see also United States v. Hicks*, 59 F. App'x 703, 708 (6th Cir. 2003) (for purposes of applying the good faith exception, relevant facts included, among other things, the use of Express Mail, the use of fictitious names and addresses, and shipment from a "recognized drug source city").  Although reasonable suspicion requires a lesser showing than probable cause, these same facts are also relevant when determining whether the judge had a substantial basis for his probable cause determination.  *See Underwood*, 1996 WL 536796, at *3-4 (considering the same facts for assessing both reasonable suspicion to detain a package and probable cause to search it).

The cases cited in the previous paragraph are distinguishable because there were other facts in those cases supporting reasonable suspicion or probable cause that are not present here.  For

instance, in *Van Leeuwen*, the sender's vehicle had Canadian license plates, yet he was attempting to mail packages from just over the border in Washington to addresses in California. *Van Leeuwen*, 397 U.S. at 250. This fact, in addition to the weight of the packages and the use of fictitious return addresses, provided reasonable suspicion to detain the packages for further investigation. *Id.* at 252. Further investigation revealed that the intended recipient of one of the packages was under investigation for trafficking in illegal coins, providing probable cause for a warrant to search that package. *Id.*

In *Alexander*, the sender apparently attempted to conceal his identity by signing an "X," which helped support reasonable suspicion when combined with the facts in that case mentioned above. *Alexander*, 540 F.3d at 501.

In *Underwood*, there were multiple suspicious packages with false sender or false recipient information, not just one. *Underwood*, 1996 WL 536796, at *3. In addition, the labels on all the packages appeared to have been written by the same person even though they purported to be from different persons and different locations. Also, one of the recipients had a criminal record. Those facts are not present here. Further, the postal inspector in *Underwood* expressly noted that, in his experience, "most Express Mail packages are sent to businesses" rather than individuals. *Id.* Here, Schmitz noted the use of Express Mail but did not assert that it was suspicious or related to drug trafficking.

In *Hicks*, the package shipped from a "recognized drug source city," whereas Schmitz suggested that the regional *destination* for Defendant's package made it suspect. *See Hicks*, 59 F. App'x at 708. Also, in *Hicks*, the names of *both* the sender and recipient did not match anyone at the destination or return addresses. *Id.* Further, the postal inspector in *Hicks* attempted to deliver the package but was told that the addressee does not live at the destination address. *Id.* Finally,

that postal inspector in *Hicks* expressly represented that "drug traffickers have been using Express Mail to transport controlled substances," whereas Schmitz did not make such a contention about the use of Express Mail.  *Id.*

On the other hand, Defendant's case contains additional facts that were not present in any of the aforementioned cases.  Specifically, law enforcement officials had relayed information to Inspector Schmitz about Defendant's involvement in the distribution of the narcotics that Schmitz believed might be present in the package.  Two informants had told law enforcement on separate occasions that they "purchase" or had "recently purchased" Percocet from Defendant.  Those facts make this case similar to *Van Leeuwen*, in which the intended recipient's suspected involvement in the illegal trafficking of coins pushed the combined facts over the threshold required for probable cause.

Similarly, evidence of Defendant's involvement in the distribution of Percocet puts this case on par with *Underwood*, which has many facts in common with this case.  There, the court concluded that the issuing judge had a substantial basis to believe that probable cause existed to search the packages at issue.  *Underwood*, 1996 WL 536796, at *4.  In that case, "someone from a drug source city was engaged in a regular schedule of mailings to Louisville and . . . this person felt the need, for some reason, to conceal both his identity and the identities of the addressees[.]" *Id.*  Also, the packages at issue possessed traits that the postal service investigator had determined were "common . . . among packages found to contain narcotics," including handwritten labels and a regular schedule of mailings.  *Id.*  As discussed above, this case shares many of those same facts. Although Defendant's case lacks some of the additional facts present in *Underwood*, the warrant affidavit here contains facts that were not present in *Underwood*—namely, facts about the package recipient's involvement in the sale of narcotics.

Defendant argues that the judge who issued the warrant could not reasonably rely on the information provided by the confidential informants because the warrant affidavit does not contain facts to establish their reliability.  For instance, there is no indication that the informants had a prior track record with law enforcement or that Schmitz or anyone else had corroborated the information that they provided.  Generally, an affidavit must provide some "indicia of the informant's reliability" in order for the informant's tip to support a finding of probable cause, though "independent corroboration of an informant's story is not necessary to a determination of probable cause." *United States v. McCraven*, 401 F.3d 693, 697-98 (6th Cir. 2005); *see United States v. Kinison*, 710 F.3d 678, 682 (6th Cir. 2013) ("[W]e have clearly held that a known informant's statement can support probable cause even though the affidavit fails to provide any additional basis for the known informant's credibility and the informant has never provided information to the police in the past.").

Here, the informants gave statements indicating that they illegally purchased controlled substances from Defendant.  Such statements were against their "penal interests" and therefore "carr[ied] their own indicia of credibility—sufficient to support a finding of probable cause to search." *United States v. Harris*, 403 U.S. 573, 583 (1971).  The affidavit also noted that the informants gave information about Defendant without receiving anything in return.  Furthermore, one informant's specific description of a "blue Percocet 30 pill" that they obtained from Defendant, which is consistent with fentanyl pills that Schmitz had seen, lent some additional credibility to that informant's statement.  Thus, the informants' statements were sufficiently reliable to provide some support for a probable cause finding.

Defendant also criticizes the information from the informants as being too vague to support a warrant because the first informant provided no information about the quantity of drugs they

purchased and neither informant indicated where they purchased drugs from Defendant.  However, those additional details were not necessary.  Even without that additional information, their statements supported an inference that Defendant had access to a supply of a controlled substance over a period of several months.  Schmitz then connected this inference to the subject package through the other facts in the affidavit.

In summary, when considering the totality of the circumstances presented in the warrant affidavit, the facts here are comparable to those in *Van Leeuwen* and *Underwood*, where courts concluded that there were sufficient facts to support the issuance of a warrant to search a package.  Accordingly, as in those cases, the judge here had a substantial basis on which to issue the search warrant.

But even if that were not the case, the good-faith exception would apply.  To "avoid the bare-bones designation and thus be one upon which an officer can rely," the warrant affidavit "need only . . . establish a 'minimally sufficient nexus between the illegal activity and the place to be searched[.]'"  *United States v. Christian*, 925 F.3d 305, 313 (6th Cir. 2019) (quoting *United States v. Brown*, 828 F.3d 375, 385 (6th Cir. 2016)).  In other words, the affidavit must "present 'some connection, regardless of how remote it may have been[.]'"  *Id.* (quoting *United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017)).  The warrant affidavit here meets that requirement.  "[I]t contains factual allegations, not just suspicions or conclusions," that purport to establish a connection between Defendant's drug trafficking activity and the package searched.  *Id.*  Thus, Schmitz reasonably relied upon the warrant when conducting his search.  Accordingly, suppression of the evidence obtained from that search is not warranted.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Defendant's motion to suppress.  The Court will enter an order consistent with this Opinion.

Dated: June 2, 2023                         /s/ Hala Y. Jarbou
                                              HALA Y. JARBOU
                                              CHIEF UNITED STATES DISTRICT JUDGE